UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
EUGENE P. DRUM,                                             2:20-cv-05132 (NG)(JMW)

                 Plaintiff,

     -against-                                          **JOINT PRE-TRIAL ORDER**

THE COUNTY OF NASSAU,

                 Defendant.
---------------------------------------------------------x

The parties to this action having consulted, do hereby prepare and file the within joint pretrial order.

**1.    Caption**

The full caption of the action is as above.

**2.    Parties and Counsel: The Names, Addresses (Including Firm Names), and Telephone and Fax Numbers of Trial Counsel:**

Plaintiff is Eugene Drum. He is represented by:

Timothy F. Schweitzer, Esq.
Hofmann & Schweitzer
212 West 35th Street, 12th Floor
New York, NY 10001
Tel: 212-465-8840     Fax: 212-465-8849
timothyschweitzer@hofmannlawfirm.com

Defendant is The County of Nassau, represented by:

Brian S. Sokoloff. Esq.
Andrew Blancato, Esq.
Sokoloff Stern, LLP
179 Westbury Avenue
Carle Place, NY 11514
Tel: (516) 334-4500
bsokoloff@sokoloffstern.com

1

**3.     Brief Statement by Plaintiff as to the Basis of Subject Matter Jurisdiction, and a Brief statement by Each Party as to the Presence or Absence of Subject Matter Jurisdiction, Including Citations to All Statutes Relied on and All Relevant Facts as to Citizenship and Jurisdictional Amount:**

   A.     **Statement by Plaintiff:**

The jurisdiction of this Court arises under and by virtue of the Jones Act, 46 U.S.C. §30104, the General Maritime Law and the Admiralty jurisdiction of the United States, under and pursuant to 28 U.S.C. §1333 and the rules of pendant jurisdiction. Nothing in these jurisdictional allegations is to be construed as a waiver of the plaintiff's right to a jury trial in plaintiff's action at law under the Jones Act, nor of the right to have all of the claims asserted herein tried to a jury, at plaintiff's option, as permitted under <u>Fitzgerald v. United States Lines Company</u>, 374 U.S. 16 (1963).

   B.     **Statement by Defendant:**

The defendant agrees that this Court has subject matter jurisdiction.

**4.     Brief Summary of Claims and Defenses to Be Tried**

   A.     **Plaintiff Eugene Drum's Summary**

### INCIDENT

On October 28. 2017, the date of his accident, Police Officer Eugene Drum was an employee of the Nassau County Police Department and a member of its Marine Bureau, working as a crew member on, and assigned to a vessel known as "Nassau County Marine 8", owned by Nassau County.  The other members of the vessel's crew of Marine 8 that day were Police Officer Joseph Stassi, who was the vessel's operator, and Police Officer Litvinski.

On October 28, 2017, the waters were rough, the conditions were windy when the vessel's crew was called on to respond to an emergency involving a capsized sailboat, in the waters of Hempstead Harbor, off the coast of Glen Cove, Long Island. When Marine 8 arrived on the scene, the crew discovered a young boy in the water, clinging to the capsized sailboat. Police Officer Drum stepped up onto the vessel's gunwale and proceeded to the bow where he was able to reach down, grab and pull the young boy up onto Marine 8; Police Officer Drum then walked the hypothermic victim down the starboard side of the vessel and handed him off to Officer Litvinski, who brought the victim into the vessel's cabin. Next, Officer Drum stepped down from the vessel's gunwale to the cockpit where he was caused to trip over an improperly stowed shore power cable. As a result, his body was caused to violently strike the vessel's transom, thereby causing him to sustain serious personal injuries.

### The vessel: Nassau County's Marine 8

Nassau County's Marine 8 is a 33-foot Bertram boat originally designed for recreational sports fishing. At some point, Nassau County designated it for use as one of its patrol vessels. At the dock, members of the Marine Bureau would connect shore power cables to link the boat's electrical port with the electrical outlet on shore, ensuring that the vessel remained powered while berthed. It was the custom and practice of the Marine Bureau members to disconnect the shore power cables from the electrical receptacle on the dock, and place the cables on Maine 8, before the vessel went out onto Patrol. It was also the custom and practice for the Marine Bureau members to store the shore power cables on top of Marine 8's engine hatch, while the vessel was underway. On October 28, 2017, Police Officer Litvinski handled the shore power cables when the vessel got underway for patrol and place them on the engine hatch of Marine 8, as was the

3

custom and practice.

### Police Officer Joseph Stassi

Police Officer Joseph Stassi is one of the Nassau County Marine Bureau's Unit training Officers who teaches a Training Course, called the Standard Marine Patrol Vessel Operators Course (SMPVOC). The County of Nassau requires all members of the Marine Bureau to attend the course, before they can be assigned to its vessels. The SMPVOC course focuses on safety measures on vessels, addressing concerns such as tripping hazards. On October 28, 2017, Police Officer Stassi, Nassau County's safety instructor, noted that Marine 8 lacked designated areas for securing shore power cables, which could result in a tripping hazard while the vessel was in operation. Police Officer Stassi also testified that on occasions while Marine 8 was underway, wind and wave conditions would cause the shore power cables to fall onto the deck of the cockpit and this would create a tripping hazard. Police Officer Stassi further testified that he regards the lack of a secure method for managing the shore power cables on Marine 8 as an unsafe condition. He expressed his concerns to multiple supervisors at the Marine Bureau; however, his complaints have not led to any modifications in the handling and stowage of the shore power cables.

### PLAINTIFF'S LIABILITY CLAIMS

Plaintiff brings this claim for negligence under the Jones Act, 46 U.S.C. § 30104 and for unseaworthiness of the vessel, Marine 8, under the General Maritime Law of the United States. As a result of the negligence of the defendant County of Nassau and of the unseaworthy condition of the vessel, Police Officer Drum was caused to suffer serious personal injuries, pecuniary losses and permanent disabilities. He seeks damages for past and future pain and suffering, for past and

future physical disability, for past and future earnings losses, for past and future medical treatment; and for such other damages as the Court deems just and equitable.

As a result of the incident on October 28, 2017, the County of Nassau, as the owner of the vessel, is liable to the plaintiff under General Maritime Law. The plaintiff sustained injuries due to the unseaworthiness of the Marine 8, as evidenced by the admissions of the County's training officers, who acknowledged that the vessel lacked a designated area for securing the shore power cables on that date. Consequently, this created a tripping hazard on the cockpit deck, which proximately led to the plaintiff's trip, fall and subsequent injury. In proving the defendant's liability under the facts, Plaintiff also intends to rely upon the opinion of the defendant County of Nassau's own marine expert Captain Hendrick Keijer, who opined that on October 28, 2017 there were available safe alternative methods of securing the shore power cables on board the Marine 8, that the crew members did not use. Nassau County's expert witness admits that the County's customary practice of storing shore power cables on top of the engine hatch was unsafe. Consequently, Nassau County was negligent, under the Jones Act, for inadequately training its personnel in safe operational procedures, and in allowing and permitting unsafe practices to be in place and used by its employees. The fact that Marine 8's crew was improperly trained is not only evidence of negligence on the part of the County of Nassau, but this improper/inadequate training of said crew and the unsafe stowage of the shore power cables rendered the vessel unseaworthy on the date of the incident.

Pursuant to the General Maritime Law, a vessel owner and/or charterer is required to provide a seaworthy vessel: i.e. One employing appliances and equipment that are reasonably fit for their intended purposes and to provide officers and crew equal in disposition and competence

5

to the ordinary workers of the calling. *Mahnich v. Southern S.S. Co.*, 321 U.S. 96 (1944); *The Arizona v. Anelich*, 298 U.S. 110 (1936); *Lindgren v. U.S.*, 281 U.S. 38 (1930); *Waldron v. Moore-McCormack Lines, Inc.*, 386 U.S. 724 (1967); *Coyle Lines, Inc. v. Dugas*, 196 F.2d 59 (5th Cir. 1952). The duty to provide a seaworthy vessel with safe equipment and appliances and competent officers and crew is absolute, and non-delegable, and exists regardless of whether the unseaworthiness is temporary or permanent. *Mitchell v. Trawler Racer*, 362 U.S. 551 (1960); *Crawford v. Pope & Talbot, Inc.*, 206 F.2d, 784 (3d Cir. 1953). A ship's crew is incompetent, and thus the ship unseaworthy, when the ship's owner fails to provide adequate training for the task to be performed (*Adams v. Liberty Maritime Corporation*, 475 F.Supp.3d 91 (2020)). A lack of training may be construed as a form of incompetence of a vessel's crew, which is a basis for unseaworthiness (*Adams v. Liberty Maritime Corporation*, 475 F.Supp.3d 91 (2020), *Adams v. Liberty Maritime Corporation*, 560 F.Supp.3d 698 (2020)). See also, *Marasa v. Atlantic Sounding Co., Inc.* 557 Fed.Appx. 14 (2014), where the court recognized that a vessel being operated by an incompetent captain or crew is considered unseaworthy, and this incompetence can be due to inadequate training; *In re Bridge Const. Services of Florida, Inc.* 39 F.Supp.3d 373 (2014) where the court held that unseaworthiness may arise from the fact that the vessel is operated by an incompetent or unfit crew, which can be based on lack of training); and *Soliman v. Maersk Line Ltd.*, 235 F.Supp.3d 410 (2017)) where the court reiterated that a crew is incompetent, and thus the ship unseaworthy, when the ship's owner fails to provide adequate training for the task to be performed.

**INJURIES**

The October 28, 2017 incident described above caused Police Officer Drum to sustain an exacerbation of a lumbar condition with increased lumbar radiculopathy and increased lower back pain; a left knee sprain/strain and contusion with aggravation of arthritis and medial meniscal tear; and left hip strain/strain and contusion with significant exacerbation of arthritis and avascular necrosis which resulted in a left hip replacement with a fair result.

B.   **Defendant's Claims and Defenses**

The subject vessel was seaworthy. To prevail on a claim of unseaworthiness, a plaintiff must prove that the vessel was insufficiently or defectively equipped, and that his or her injuries resulted from the unseaworthy condition of the vessel. *See Oxley v. City of New York*, 923 F.2d 22, 26 (2d Cir. 1991). As pointed out by Plaintiff, Captain Hendrik J. Keijer, Defendant's expert, shows there were several locations available for storage for the power cables, any of which would have prevented the accident. While Plaintiff claims that storing the power cable on the hatch cover made the vessel unseaworthy, the power cable did not have to be stored there, and storing the power cables on the hatch cover did not change the character or condition of the vessel itself. Accordingly, the vessel was reasonably fit for use by Plaintiff and the other crew members, and Plaintiff's claim of unseaworthiness under general maritime law is unsustainable.

Plaintiff's claim under the Jones Act fails for the same reason. Because there were several alternative locations where the power cables could have been stored, the vessel provided by Defendant was not unfit for use by Plaintiff and the other crew members. The falling of the cables from the hatch cover onto the deck in prevailing weather and water conditions is not proof of

Defendant's negligence because nobody from Nassau County directed the placement of the cables on the hatch cover.

Moreover, Plaintiff is comparatively at fault for the injuries he suffered. Plaintiff testified to a pattern of cable storage on the engine cover and admitted he noticed them on the engine cover before his fall on the date of the incident. Plaintiff also saw the high winds and "choppy" water on the date of his accident. If Plaintiff contends the placement of the cables was dangerous, he knew of the dangers before the accident. Nonetheless, Plaintiff crossed the area where the cables sat, an open and obvious area, and did not store the cables, avoid the cables, or ask for assistance in removing the cables. Finally, the Plaintiff's accident was not proximately caused by cables, but by Plaintiff's failure to keep balance while reentering the stern of the boat from the gunwale area.

**5.     Brief Statement of Categories and Amounts of Damages Claimed or Other Relief Sought**

**A.     Plaintiff's Damages Sought**

**DAMAGES WHICH PLAINTIFFS WILL SEEK**

**UNDER THE GENERAL MARITIME LAW AND THE JONES ACT**

While distinct theories of recovery, "Unseaworthiness" under 42, U.S.C. § 1331, et seq., and a "Jones Act" negligence case, under 46 U.S.C. App. § 30104, *et seq.*, have essentially identical measures of damages. Gilmore and Black, *Law of Admiralty* § 6-39 (2d ed.1975) at 389-90; 1 T. Schoenbaum, *Admiralty and Maritime Law* § 6-25 at 339 (2d ed.1994); *Kopczynski v. The Jacqueline,* 742 F.2d 555, 560 (9th Cir.1984), cert. denied, 471 U.S. 1136 (1985) (citing 1B Benedict on Admiralty, § 21 at 3-3 (1983); *Miller v. Arctic Alaska Fisheries Corp.*, 944 P.2d 1005 (Wash. 1997); *McAllister v. Magnolia Petroleum Co.*, 357 U.S. 221, 224-25 (1958) (the

unseaworthiness and Jones Act negligence claims are but alternative grounds of recovery for a single cause of action).

In the instant matter, plaintiff is entitled to recover his lost earnings, past and future, including recovery for losses related to any impairment in his past, present and future earning capacity; his medical expenses; damages for past, present and future pain, suffering, discomfort and inconvenience; and damages for his loss of use and enjoyment of life's activities and life's pleasure. (See, *Pfeiffer v. Jones & Laughlin Steel Corp.*, 678 F.2d 453, 460 (3rd Cir. 1982).).

## ECONOMIC DAMAGES

As a result of the injuries sustained in the October 28, 2017 incident plaintiff had to use 90.5 sick days and, had he not, he would have been compensated for half of them, or 45.25 days, at the time of his retirement. Therefore, plaintiff's economic losses are as follows:

45.25 days x $519.6552/day = $23,514.40

**B.     Defendant's Relief Sought**

Dismissal of the Plaintiff's action.

**6.     Jury or Bench Trial and Trial Length**

**A.     Statement by Plaintiff:**

The case is to be tried to a jury and four days are needed for trial.

**B.     Statement by Defendant:**

Defendant agrees.

**7.     A Statement of Whether All Parties Consented to Trial of the Case by a Magistrate Judge**

The parties do not consent to trial by Magistrate Judge.

8. **Stipulations or Statements of Facts Agreed to by All Parties**

   A. Plaintiff Eugene Drum was in the employ of the County of Nassau and assigned to Marine Bureau on January 18, 2009.

   B. The County of Nassau was, for all intents and purposes, the owner of the vessel Marine 8 on January 18, 2009.

   C. County of Nassau had exclusive possession, control, use and operation of the vessel on that date.

   D. On October 28, 2017 the crew of Nassau County Marine 8 consisted of three members, police Officer Joseph Stassi, Police Officer Oleg Litvinski, and plaintiff.

   E. Plaintiff's accident happened while Marine 8 and her crew were experiencing high winds and choppy seas.

9. **List of Names and Addresses of Witnesses with Brief Narrative Statement of the Expected Testimony**

   A. **Plaintiff's Witnesses:**

   Plaintiff Eugene Drum is expected to testify as to the facts concerning the incident, the training he received as a member of the Nassau County Marine Bureau, Nassau County Marine Bureau's custom and practice of stowing Marine Bureau 8's shore power cable while underway, his physical condition before and after the incident, and his economic losses. He will also testify about his pain and suffering, his treatment and disability status, as well as the effects of his injuries on his daily life. Plaintiff is expected to testify in person.

Police Officer Stassi is expected to testify as to the facts concerning the incident, his role as one of a Nassau County Marine Bureau's Training Officers, the training he provides to members of the Nassau County Marine Bureau, Nassau County Marine Bureau's custom and practice of stowing Marine Bureau 8's shore power cable while underway, that Marine Bureau's Custom and Practice of stowing Marine Bureau 8's shore power cable was unsafe, constituted a tripping hazard and about the numerous complaints that Officer Stassi made to his supervisors, prior to October 28, 2017, about the need for a proper way to secure Marine Bureau 8' shore power cable and his supervisor's response. Police Officer Stassi is also expected to testify of his observations on the date of the incident. He is expected to testify in person.

Dr. David Benatar, Plaintiff's Medical Expert Witness, will provide expert testimony regarding Plaintiff's lumbar spine, left knee and left hip injuries. His testimony will cover diagnosis, causation, treatment, disability status, prognosis and future medical needs and will be consistent with his report that was previously provided to defendant in accordance with Rule 26 FRCP. He is expected to testify in person.

Plaintiff reserved the right to call any witness listed by defendant for cross examination.

**B.     Defendant's Witnesses:**

**Officer Joseph Stassi:** will testify that he did not see Plaintiff's accident. He will testify that he did not know how the power cables were stored on the date of the accident as he did not see the power cables before the accident. He will testify that, in his experience, he never saw anyone trip on the shore power cables.

**Officer Oleg Litvinski:** will testify to his observations on the date of Plaintiff's accident and his training as an officer in the Marine Bureau.

11

**Dr. Evan W. Schwechter**: will testify as an expert witness. He will testify about his independent medical examination of Plaintiff and his examination of Plaintiff's medical records. He will testify that Plaintiff's left hip issues stemmed from avascular necrosis caused by condition(s) independent of his accident. He will also testify to Plaintiff's prognosis.

**Hendrik J. Keijer:** will testify as an expert witness. He will testify that Plaintiff failed to reasonably act on what he identified as 'improperly stored' shore power cords; Plaintiff could and should have applied good seamanship by securing the shore power cords; and that the subject vessel was seaworthy in that it was fitted with reasonable means to stow and secure shore power cords.

**Retired Officer Miller:** will testify to the training Plaintiff received.

**10.    Designation by Each Party of Deposition Testimony to Be Offered with Cross-Designations and Objections**

    **A.    Deposition Testimony Designation by Plaintiff:**

DEPOSITION TESTIMONY OF POLICE OFFICER STASSI

| PAGE | LINES |
|------|-------|
| 4 | 8-10 |
| 5 | 22-25 |
| 6 | 2-6, 12-25 |
| 7 | 2-25 [Defendant objects to question at line 14 (question is unclear)] |
| 8 | 2-3 |
| 9 | 2-24 [Defendant objects to line 2 (it is not a question)] [Defendant objects to lines 4 to 16 because the witness did not teach the course Plaintiff took and did not begin teaching the course before Plaintiff's accident] |
| 10 | 16-19 |
| 12 | 11-25 |
| 13 | 4-17 [Defendant cross-designates lines 2-3] [Defendant objects to lines 15-17 based on hearsay and relevance] |
| 14 | 23-25 |

15        2-10, 14-16 [Defendant objects to lines 2-10: the witness is not testifying from personal knowledge, and his answer is an assumption.]
16        5-19 [Defendant cross-designates 16:20 – 17:17]
22        18-25 [Defendant cross-designates 23:2-3] [Defendant objects to 22:18 – 23:6 because the witness is not testifying from personal knowledge. He said he did not see the recovery.]
23        4-6
24        12-221 [Defendant objects because the witness did not see what occurred in the cockpit, and, therefore, his testimony about "an incident" occurring is speculation. He confirms that he acquired his knowledge from hearsay at 25:9 - 16]
26        13-24 [Defendant cross-designates 26:9 – 12]
27        2-25 [Defendant objects to 27:9 – 28:9. The questioning is unclear and calls for the operation of someone else's mind. The testimony is also irrelevant.]
28        2-25 [Defendant objects to 28:18 in that it calls for opinion evidence from a lay witness, and because there is no proper foundation for the assumption in the question that the cables depicted in the photo are in the condition they were in at the time of the accident]
29        2-25 [Defendant objects to 28:24-29:10 because (a) the phrase "was to be stowed" is vague and (b) because the court reporter did not get the entire answer and inserted the word "inaudible" in the transcript.] [Defendant objects to 28:22 – 30:4 because it calls for expert opinion testimony. In fact, this very opinion is the subject of testimony by Defendant's expert, Capt. Kaidjer.]
30        2-4
32        3-21 [Defendant objects to 32:3 – 21. The witness's testimony is so vague as to the person to whom he complained and when he complained as to be totally meaningless and insufficient to establish that the County was somehow on notice of a hazardous condition, particularly where there is no proof that anyone ever fell because of the situation Plaintiff describes. In fact, at p 33:13-16, the witness admits he never saw anybody fall from the condition.]
33        4-20

**B.    Deposition Testimony Designation by Defendant:**

DEPOSITION TESTIMONY OF PLAINTIFF

7:23-25

8:1-15

9:8-24

11:14-25

12:2

20:23-21:15

21:25

22:2-9, 22-24

23:7-25

24:2-25

25:2-25

26:1-3, 13-19

28:20-25

29:2-25

30:2-30:25

31:2-25

32:2-25

33:2, 23-5

34:2-6

35:22-5

36:2-6

PLAINTIFF'S OBJECTION - RELEVANCE

37:15-25

38:2-25

41:12-25

42:2-5

48:8-25

PLAINTIFF'S OBJECTION - HEARSAY

49:2, 6-25

50:2

58:6-14

60:18-24

PLAINTIFF'S OBJECTION - ARGUMENTATIVE

61:20-62:25

PLAINTIFF'S OBJECTION - HEARSAY

62:2-18

PLAINTIFF'S OBJECTION - HEARSAY

63:2-15

80:23-82:25

8:23

**11. (1) A Statement of Stipulated Facts**

The facts stipulated to are the same as listed in Response #8, above.

**(2) A Schedule Listing Exhibits to be Offered in Evidence and The Parties that Will be Offering Them, with Objections**

**A. Plaintiff's Proposed Exhibits:**

Exbibit 1:   Nassau County Police Department Members Injury/Accident Report
*(objection to portions based on hearsay)*

Exhibit 2:   Photo of Marine Bureau 8
*(no objection if the photograph is from deposition of Joseph Stassi, Plaintiff's Exhibit 2)*

Exhibit 3:   Photo of the Shore Power Cables on board Marine Bureau 8
*(Objection for lack of foundation)*

Exhibit 4:   Marine Bureau 8's Logbook Page for October 28, 2017

15

*(no objection)*

Exhibit 5: Non-Recordable Injury to Member Form, dated October 28, 2017
*(objection: hearsay)*

Exhibit 6: Medical and Billing Records from the office of Dr. Alexander Weingarten
*(objection as never received, objection to billing records as irrelevant. Defendants further object as Plaintiff's exhibit is unclear as to specific portions to be designated).*

Exhibit 7: Medical and Billing Records from NYU Langone Radiology
*(objection as never received, objection to billing records as irrelevant. Defendants further object as Plaintiff's exhibit is unclear as to specific portions to be designated).*

Exhibit 8: Medical and Billing Records from Kelian Family Chiropractic
*(objection to billing records as irrelevant. Defendants further object as Plaintiff's exhibit is unclear as to specific portions to be designated).*

Exhibit 9: Medical and Billing Records from the office of Sam Barzideh, MD, Winthrop Orthopedic Associates, P.C.
*(objection to billing records and various portions of the medical records to be irrelevant. Defendants further object as Plaintiff's exhibit is unclear as to specific portions to be designated).*

Exhibit 10: Medical and Billing Records from NYU Winthrop University Hospital
*(objection as never received, objection to billing records as irrelevant. Defendants further object as Plaintiff's exhibit is unclear as to specific portions to be designated).*

Exhibit 11: Request For Payment of Lagged Payroll
*(objection as never received, vague, irrelevant).*

Exhibit 12: Members Service Leave Activity
*(objection as never received, vague, irrelevant).*

Exhibit 13: Employee's Claim for Severance Payment
*(objection as never received, vague, irrelevant).*

Exhibit 14: County of Nassau and the Police Benevolent Association of the Police Department of the County of Nassau Agreement
*(objection as confusing, irrelevant)*

Exhibit 15: SMPVOC Course Materials
*(objection as never received by Defendants, confusing. Defendants further object as Plaintiff's exhibit is unclear as to specific portions to be designated.*

**B.   Defendant's Proposed Exhibits:**

Exhibit 1:   Marine Bureau 8's Logbook Page for October 28, 2017

Exhibit 2:   Nassau County Police Department Members Injury/Accident Report

Exhibit 3:   Marine Bureau Roll Call for 10/28/27

*(Objection as to relevance)*

Exhibit 4:   Photographs/Diagrams in Capt. Keijer's expert report

*(Objection as to foundation and relevance)*

Dated: December 20, 2024

HOFMANN & SCHWEITZER
*Attorneys for Plaintiff, Eugene Drum*

By: /s/ Timothy Schweitzer
Timothy F. Schweitzer
212 West 35th Street, 12th Floor
New York, NY 10001
Tel: 212-465-8840   Fax: 212-465-8849
timothyschweitzer@hofmannlawfirm.com


SOKOLOFF STERN, LLP
*Attorneys for Defendant, The County of Nassau*

By: Brian S. Sokoloff (Digitally signed by Brian S. Sokoloff, Date: 2024.12.20 15:42:03 -05'00')
Brian S. Sokoloff. Esq.
179 Westbury Avenue
Carle Place, NY 11514
Tel: (516) 334-4500
bsokoloff@sokoloffstern.com